CASE NOS. 13-2256(L), 13-2294 XAP

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

LINDA A. EVANS,
Plaintiff - Appellee/Cross-Appellant
v.

GEORGE L. PERRY, Director of Pitt County Social Services in his
official capacity; CYNTHIA M. ROSS, in her individual capacity, LINDA
MILLION, in her individual capacity,
Defendants - Appellants/Cross-Appellees,

and

PITT COUNTY DEPARTMENT OF SOCIAL SERVICES; APRIL
HANNING, in her individual capacity; LINDA MARTIN CURTIS; in her
individual capacity,
Defendants.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF NORTH CAROLINA
AT GREENVILLE

-------------------------------------

**RESPONSE BRIEF OF APPELLEE/CROSS-APPELLANT**

-------------------------------------

David C. Sutton
105-B Regency Boulevard
Greenville, NC 27834
(252) 756-7124
Counsel for Appellee/Cross-Appellant

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __13-2256__        Caption: Linda A. Evans v. Pitt County DSS, et al

Pursuant to FRAP 26.1 and Local Rule 26.1,

Linda A. Evans
(name of party/amicus)

who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.    Does party/amicus have any parent corporations?        ☐YES ☑NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?        ☐YES ☑NO
      If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct
    financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected
    substantially by the outcome of the proceeding or whose claims the trade association is
    pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: _____    Date: __11/22/13__

Counsel for: __Linda A. Evans/Appellee__

## CERTIFICATE OF SERVICE
**************************

I certify that on _____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

Scott C. Hart                       Linda Martin Curtis
PO Drawer 889                       610 Channel Drive
New Bern NC 28563                   Winterville NC 28590

_____           __11/22/13__
        (signature)                      (date)

- 2 -

TABLE OF CONTENTS

TABLE OF AUTHORITIES………………………………………………..ii

STATEMENT OF SUBJECT MATTER
AND APPELLATE JURISDICTION…………………………….…...1

ISSUES PRESENTED FOR REVIEW………………………………..1

STATEMENT OF THE CASE………………………………………..2

STATEMENT OF THE FACTS…………………………………………4

SUMMARY OF THE ARGUMENT…………………………….......7

STANDARD OF REVIEW…………………………………………...12

ARGUMENT……………………………………………………...12

I.  Absolute immunity does not apply because none
of the Defendants were alleged to be performing
functions that are prosecutorial in nature.

II.  Defendants are not entitled to qualified immunity for Plaintiff's
familial claims because she has a clearly defined constitutional right
regarding her elderly mother and it was error to dismiss those claims.

III.  Defendants are not entitled to qualified or absolute immunity for
Plaintiff's  claims related to Medicaid planning because she has a
clearly defined constitutional right to engage in that activity and it was
error to dismiss those claims.

IV. Plaintiff's abuse of process claim should be reinstated as Plaintiff
alleged the necessary elements.

V.  Plaintiff's claim for intentional infliction of emotional distress was
sufficiently pled and should be reinstated.

i

CONCLUSION…………………………………………………...29

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

TABLE OF AUTHORITIES

Page(s)

CASES

*Austin v. Borel*
    830 F.2d 1356 (5th Cir.1987)....................................................................13

*Acosta v. Byrum*
    180 N.C. App. 562, 638 S.E.2d 246 (2006)...............................................28

*B.S. v. Somerset County*
    704 F.3d 250 (3rd Cir., 2013)....................................................................15

*Forbis v. Honeycutt*
    301 N.C. 699, 701, 273 S.E.2d 240, 241……………………………...27

*Forrester v. White*
    484 U.S. 219, 230, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988)......................15

*Goldstein v. Moatz*
    364 F.3d 205, 210 (4th Cir. 2004)..............................................................12

*Imbler v. Pachtman*
    424 U.S. at 430, 96 S.Ct. at 994, 47 L.Ed.2d at 143………………….13

*Johnson v. Ruarck Obstetrics*
    327 N.C. 283, 395 S.E.2d 85 (1990).........................................................27

*Larson v. Domestic and Foreign Commer Corp.*
    337 U.S. 682, 689 (1949)...........................................................................21

*Lee v. City of Los Angeles*
    250 F.3d 668 (9th Cir. 2001).....................................................................19

*McAllister v. Ha*
    347 N.C. 638, 496 S.E.2d 577 (1998)........................................................28

iii

*Meyers v. Contra Costa County Dep't of Social Servs.*

    812 F.2d 1154 (9th Cir. 1987)...................................................................13

*Myers v. Morris*
    810 F.2d 1437 (8th Cir.1987)...................................................................13

*Moore v. City of East Cleveland*
    431 U.S. 494 (1977)..................................................................................17

*New York State Bar Association v. Reno*
    999 F. Supp 710 (NDNY 1998)...........................................................9, 22

*Odd v. Malone*
    538 F.3d 202, 207–08 (3d Cir.2008).......................................................15

*Robison v. Via*
    821 F.2d 913 (2d Cir.1987)......................................................................13

*Smith v. City of Fontana*
    818 F.2d 1411 (9th Cir. 1987).................................................................18

*Strandberg v. City of Helena*
    791 F.2d 744 (9th Cir. 1986)...................................................................18

*Vosburg v. Dep't of Soc. Servs.*
    884 F.2d 133 (C.A.4 (Va.), 1989).....................................................13, 22

CONSTITUTIONAL PROVISIONS

U.S. CONST. amend. I...............................................16, 18, 29, 23

U.S. CONST. amend. XIV.............................................16, 18, 19

STATUTES

28 U.S.C. § 1331.............................................................................1

iv

28 U.S.C. § 1343……………………………………………………….....1

28 U.S. C. § 1983……………………………………………3, 7, 8, 18, 19, 29

RULES

Fed. R. Civ. P. 12(b)(6)........................................................................2, 3, 14

## STATEMENT OF SUBJECT MATTER AND
## APPELLATE JURISDICTION

Plaintiff-Appellee invoked jurisdiction of the United States District Court for the Eastern District of North Carolina pursuant to 28 U.S.C. §§ 1331 and 1343. The District Court entered judgment on September 18, 2013. Defendants filed a notice of interlocutory appeal on October 15, 2013 and Plaintiff-Appellee filed a notice of cross-appeal on October 18, 2013.

Judicial economy justifies reaching the interrelated issues of qualified immunity and the pendent state tort claims on appeal while hearing absolute immunity. All the claims are based upon interrelated facts. The Appellant's interlocutory appeal argues that virtually any claim that the Plaintiff made or could ever make is subject to immunity of one type or other. Rather than hearing the matters piece meal, it is logical to hear all issues the matter of immunity at once along with the related pendent state claims. Interlocutory appeals are generally prohibited to prevent never ending litigation. Hearing all related matters at once serves that purpose.

## ISSUES PRESENTED FOR REVIEW

1) Absolute immunity does not apply because none of the Defendants were alleged to be performing functions that are prosecutorial in nature.

1

2) Defendants are not entitled to qualified immunity for Plaintiff's familial claims because she has a clearly defined constitutional right regarding her elderly mother and it was error to dismiss those claims.

3) Defendants are not entitled to qualified or absolute immunity for Plaintiff's claims related to Medicaid planning because she has a clearly defined constitutional right to engage in that activity and it was error to dismiss those claims.

4) Plaintiff's abuse of process claim should be reinstated as Plaintiff alleged the necessary elements.

5) Plaintiff's claim for Intentional Infliction of Emotional Distress was sufficiently pled and should be reinstated.

## STATEMENT OF THE CASE

Appellant omitted that the Defendants below did not raise absolute immunity until the District Court solicited objections to the Magistrate's Memorandum and Recommendations. Nonetheless, Judge Flanagan ruled that absolute immunity did not apply and noted the issue had not been raised previously. (JA 27-82) Qualified immunity was raised in Defendants' Memorandum, but not in their motion to dismiss. (JA 27-29) Their memorandum raised qualified immunity as a Rule 12(b)(6) argument for failure to state a claim upon which relief can be granted as to the individual

defendants.  Appellants appealed the denial of absolute immunity on an interlocutory basis, but now argue that the claims they originally asked to be dismissed for qualified immunity now be dismissed due to absolute immunity.

The Magistrate (and the District Court) concurred that qualified immunity barred Plaintiff's § 1983 claims related to "familial rights" regarding her elderly mother and "Medicaid planning".  Consequently, it dismissed those claims.  Appellee/Cross-Appellant argues that it was error to dismiss those claims.

The procedural due process claims against Defendants Million and Ross were not dismissed.  Also, the "derivative due process claim" against Defendant Perry survived but "only with respect to the surviving due process claims" against Defendants Million and Ross.  However, the claim against Perry was not simply derivative as he was personally involved.  Appellants argue now that these claims should be dismissed based upon absolute immunity.

The pendant state torts of abuse of process and intentional infliction of emotional distress were dismissed based upon insufficient pleading, pursuant to Rule 12(b)(6).  They involve the same facts as the other claims on appeal.  Appellee/Cross-Appellant submits that those claims were sufficiently pled.

## STATEMENT OF THE FACTS

[At this stage, all allegations in Plaintiff's complaint must be accepted as true.  Appellant refers to matters outside the complaint.  While permissible, they are not entitled to any presumption.]

In 2009, the Pitt County DSS initiated an emergency dependency proceeding to have Plaintiff's elderly mother (who was suffering from advanced dementia due to Alzheimer's) removed from Plaintiff's care.  The bases were alleged physical, psychological and financial abuse.  The action was brought by, and in the name of  "George L. Perry", the Director of the Pitt County Social Services and a named defendant in the action.  (JA 34)

Without naming the Plaintiff in the action as a party to the dependency action AND without any statutory basis AND without any relevant prayer for relief AND at a continuance hearing IN THE PLAINTIFF'S ABSENCE, Pitt County DSS and its social worker agents froze and seized every dime Plaintiff had to her name. (JA 49-50) North Carolina General Statutes empower DSS to freeze the assets of the dependent adult, not the alleged abuser.  Still, DSS pursued Plaintiff for contempt of the illegal order. (JA 16)

At the subsequent hearing "on the merits," DSS stated that Plaintiff's "rights were not affected at the hearing" and Plaintiff "was not an essential

4

party." (JA 18) Consequently, Plaintiff was barred from any participation in the hearing wherein DSS sought the forced removal of her aged, incompetent mother from their home. DSS determined that lawful Medicaid planning activities that were advised by, and mostly performed by, Mae Bell Evans' board-certified elder attorney constituted illegal financial abuse. (JA 35)

The hearing is notable for what did not happen. DSS did not call the attorney who drafted the power of attorney and prepared the deed for the transfer of Mae Bell's property. They did call Mae Bell's geriatric doctor as a witness but did not ask her if she saw evidence of abuse or neglect. (JA 13,18)

Later still, Defendant George Perry personally swore to the truth (of untrue allegations) in a civil action (finally the Plaintiff was a named Defendant) that sought to take all of Plaintiff's real estate. (JA 82-92) DSS filed a lis pendens to cloud the title to her real estate. (JA 19) This action was dismissed when Plaintiff's mother died.

Close in time to the aforementioned civil action against Plaintiff, DSS complained to the local sheriff and obtained Plaintiff's arrest for financial crimes against her mother and physical and psychological abuse crimes. (JA 79-81) The arrest warrants were issued on Plaintiff's birthday. These

5

charges survived her mother's death but two years later all charges were dismissed with prejudice. Still, Plaintiff was incarcerated for four days under a half million dollar bond before she could meet the conditions of release - which was difficult because DSS had already seized all of her funds.

During Plaintiff's time in jail she was assaulted and suffered great indignity, physical and emotional trauma and financial distress. (JA 21-23) If convicted as charged, the 66 year old Plaintiff would have spent the rest of her life in prison!

Defendants Ross, Million and Hanning severely restricted Plaintiff's access to her mother, though the Court specifically refused to do so. Plaintiff learned of her mother's demise when she read the death notice in the local newspaper. (JA 21)

Plaintiff suffered grievous injuries including physical, psychological and financial harm - not to mention being separated from her mother (whom she moved from Atlanta to care for four years earlier) and being forced from their home and deprived of virtually everything she had - including her liberty. (JA 21)

After all the allegations against Plaintiff in the criminal action were found to be false and baseless, Plaintiff brought this action for deprivation of

6

her Constitutional rights under § 1983 along with the state tort claims for abuse of process and intentional infliction of emotional distress.

## SUMMARY OF THE ARGUMENT

The District Court reached the correct conclusion with regard to absolute immunity. It does not apply. The reason is that Plaintiff's section 1983 claims do not encompass prosecutorial functions, the acts complained of are ultra vires, and the Defendants acted in bad faith.

Appellants' absolute immunity argument is internally inconsistent and circular as well. They argue that the social worker defendants were performing a prosecutorial function and are therefore absolutely immune. The prosecution's target presumably was the Plaintiff. However, DSS successfully argued that the Plaintiff was not an "essential party [to]this proceeding [that] did not affect [her] legal rights" -- though they had already frozen her bank accounts! A prosecution is an adversarial proceeding. This was most definitely a one sided affair.

Appellants argue that they are absolutely immune because *they asked the Court* to take the Plaintiff's mother (and her money) away without allowing her to be heard in a legal action (to which she was not a named party) wherein the pleadings did not seek to freeze Plaintiff's assets in their prayer for relief. Under that reasoning, a due process deprivation is never

7

actionable so long as the government official asks the court first. Courts are absolutely immune as well. Problem solved. The "illogical extension" of this argument is preposterous. A social worker can rip a family apart and take anybody's money whenever they want and do so with complete impunity -- in the absence of statutory authority and without a good faith factual basis -- if they find a cooperative judge. Such a holding would effectively repeal section 1983.

Plaintiff had a clearly established, constitutionally protected familial right when the government agency stepped in and took away her aged, incompetent mother. The complaint more than adequately alleges a clear violation of that right. Hence, it was error to dismiss Plaintiff's claims based on constitutionally protected familial rights due to qualified immunity.

The District Court also adopted the Magistrate's rationale that qualified immunity applied because Plaintiff's constitutional rights regarding her mother (whose Alzheimer's condition made her just as incompetent as any toddler) were somehow inferior to a parent's rights when a minor child is involved. Defining a family is a slippery slope that the Supreme Court has rejected and it is neither necessary nor appropriate here.

Minor children are afforded special treatment because they are "incompetent" under the law, not because we love them more. It is our duty

8

to take care of them.  Mae Bell Evans proverbially became a child for a second time and it was Plaintiff's turn to take care of her.  The case law on children supports Plaintiff's position.

In 2006,  three years before DSS stepped in, Plaintiff and her mother went to a board certified elder lawyer, Larry Graham, who prepared a Power of Attorney and gave them constitutionally protected advice on how to preserve the family farm in the event that Mae Bell ever went on Medicaid.  The next year, he prepared the deed that transferred Mae Bell's land to the Plaintiff.  [In 2007, North Carolina extended the "look back" period for Medicaid from three years to five years and many elder law practitioners advised their clients to make transfers of real estate that year.]  Two more years passed after the deed was recorded.  Then, in June of 2009 when Mae Bell's condition had seriously deteriorated, DSS decided that Plaintiff had stolen her mother's assets.  DSS then deemed it an emergency though the financial transactions were publicly recorded years earlier.

Plaintiff's claims based upon her alleged constitutional right to engage in Medicaid planning were dismissed in error as the District Court found there to be no constitutional right at issue.  However, *New York State Bar Association v. Janet Reno*, 999 F. Supp 710 (NDNY 1998), supports Plaintiff's claim to a constitutionally established right.  That Court entered a

9

permanent injunction that barring the enforcement of a federal law that made it illegal for lawyers "to advise" clients how to transfer property in order to legitimately qualify for Medicaid benefits. The court stated that Medicaid planning was legal and the law prohibiting advice violated the First Amendment.

The District Court adopted the Magistrate's position that "Medicaid planning" was neither protected speech nor expressive conduct. As a result, they determined that Plaintiff had not alleged a clear violation of any well established constitutional right.

Appellee/Cross-Appellant submits that Plaintiff was simply expressing her opposition to the government's attempts to take family farms away from Medicaid recipients.

It seems incongruous that Medicaid planning is legal and advising about it is constitutionally protected, but acting upon that advice is not. DSS is the agency charged with administering Medicaid and they should be knowledgeable about the status of decades old law regarding Medicaid planning. If Plaintiff's actions are protected by the First Amendment, there can be little doubt that those rights were violated.

Moreover, any type of immunity presumes good faith and legal authority to act. DSS stated on the record that the Plaintiff's rights were not

affected at the dependency hearing to take away her mother and her money and that she had no right to even participate. Plaintiff's money was initially seized at a continuance hearing in her absence. Moreover, DSS had no legal authority to even ask the Court to seize the Plaintiff's assets. Their acts were completely ultra vires.

The defendants' words and deeds demonstrated a complete absence of good faith and either a shocking ignorance of their own authority or a complete disregard for it. Either way, immunity does not apply.

The Defendants placed severe restrictions on Plaintiff's visitation with her mother. They put Mae Bell in a nursing home an hour away from their home. The judge in the case specifically refused to place such draconian restrictions on their visitation. However, he left it up to DSS. Plaintiff learned of her mother's death by reading her death notice in the local paper. Nothing justified Defendants Ross', Million's and Hanning's callousness.

However, more was to come. Several months later, DSS sued Plaintiff to take her land as well. DSS obtained Plaintiff's arrest (on her birthday) and arranged a half million dollar bond. If the 66-year-old Plaintiff had been convicted of the multiple felony charges levied against her, she surely would have died in prison. Two years later, it was

determined that no laws were violated by Plaintiff and all charges were dismissed with prejudice.

The foregoing actions by defendants can only be described as malicious. It is no exaggeration to say that Plaintiff went through Hell. She suffered severe emotional, physical and financial injury. Her damages are both real and significant.

All the above mentioned facts were pled by Plaintiff. At a minimum, these facts are sufficient to state a cause of action for state law tort claims for abuse of process (as many of the acts came after the initial legal action by Defendants) and intentional infliction of emotional distress under North Carolina law given that notice pleading is all that is required.

## STANDARD OF REVIEW

The review of a district court's dismissal of a complaint for failure to state a claim is de novo. *Goldstein v. Moatz,* 364 F.3d 205, 210 (4th Cir. 2004) Accordingly, the review of a district court's determination of absolute immunity and qualified immunity are also subject to de novo review. *Id.*

## ARGUMENT

I: Absolute immunity does not apply because the Defendants were alleged to be performing functions that are prosecutorial in nature and they have not met their burden.

We emphasize, however, that our grant of absolute immunity applies only to those activities of social workers that could be deemed prosecutorial. We in no way intend our decision to be read as holding that such workers are immune from liability arising from their conduct in investigating the possibility that a removal petition should be filed. Indeed, any such holding on our part would involve an over-extension of Imbler, and would be in direct conflict with the other appellate decisions addressing that question. See *Imbler*, supra 424 U.S. at 430, 96 S.Ct. at 994, 47 L.Ed.2d at 143 ("We have no occasion to consider whether [absolute] immunity [is required] for those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of advocate. We hold only that in initiating a prosecution and in presenting the state's case, the prosecutor is immune from a civil suit for damages."); *Meyers v. Contra Costa*, supra, (making clear that social workers were entitled to only good faith immunity for their investigative conduct prior to filing a dependency petition); *Myers v. Morris*, 810 F.2d 1437 (8th Cir.1987) (county law enforcement officials and state social workers who investigated the initial complaints of neglect entitled to only good faith immunity); *Robison v. Via*, 821 F.2d 913 (2d Cir.1987) (Assistant state's attorney and state trooper entitled only to qualified immunity for their role in investigating a complaint that two children were being physically and sexually abused); *Austin v. Borel*, 830 F.2d 1356 (5th Cir.1987) (Louisiana social workers have only qualified immunity with respect to their decision to file a complaint seeking the removal of children from their parents' home, because state law specifies that the filing of such a complaint does not constitute the initiation of judicial proceedings. Once the complaint is filed, it falls to the state prosecution to decide whether to file a removal petition.) *Vosburg v. Department of Social Services*, 884 F.2d 133 (C.A.4 (Va.), 1989).

__The District Court cited *Vosburg* in its Order and determined that absolute immunity did not apply as Plaintiff's allegations were not for prosecutorial type actions. (JA 138-139) Though the Defendants below did not properly

raise the issue[1] and the Plaintiff had no opportunity to address the issue, the

Court dispensed with the issue in the interests of judicial economy.  Her

reasoning and rationale are apt, succinct and apply equally to the argument

Appellants make in their brief.  The District Court cited several factual

allegations in the complaint that were not prosecutorial in nature.

The following is a list (non-exhaustive) actions by Defendant social

workers alleged by Plaintiff in her complaint (with the paragraph number)

that are not prosecutorial functions:

> 30. Unannounced visit by Ross to Plaintiff's home;
> 34. Second Unannounced visit by Ross to Plaintiff's home:
> 38. Ross and Million arrive unannounced at Plaintiff's home a third
> time:
> 39. Ross tells Plaintiff she must leave;
> 41. Ross' failure to make a plan as she is required to do;
> 42. Ross and Million give Evans 2 hours to get out of her house;
> 44. Ross limited visitation with Plaintiff's mother (and also Hanning);
> 45. Ross further restricts visitation in derogation of Judge's
> instructions;
> 46. Further visitation restrictions by Ross;
> 47. Million refuses to give Nancy Evans a letter saying Ross made
> false claims about Plaintiff intimidating her mother;
> 48. Million terminated weekly visitation due to DSS inconvenience;
> 56. False testimony by Ross (also 60-63, 66, 69);
> 59.  Failure to conduct forensic audit though instructed to do so by
> Judge; and 78-80, 88-91.  Instances of mistreatment of Mae Bell such

---

[1] Only after the District Court asked for objections to the Magistrate's M &
R, did Defendants raise the defense of "absolute immunity". In fact,
Defendants did not mention qualified immunity in their motion to dismiss
but did raise it as a 12(b)(6) issue in their memorandum in support of their
motion to dismiss.

as putting her in a distant nursing making visitation by anyone her age difficult, if not impossible, that resulted in emergency hospitalizations of Mae Bell which had the effect of making her existence miserable and ultimately hastening her death.

The allegations above do not describe actions that are prosecutorial in nature. Rather, they appear to be arbitrary, capricious -- and often malicious actions with no legitimate purpose whatsoever. The acts complained of above could have been omitted altogether and DSS would have been able to go about their business.

> Still, absolute immunity is "strong medicine, justified only when the danger of [officials' being] deflect[ed from the effective performance of their duties] is very great." *Forrester v. White,* 484 U.S. 219, 230, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988) (alterations in original) (citation and internal quotation marks omitted). Moreover, officials who "seek exemption from personal liability" on that basis bear "the burden of showing that such an exemption is justified by overriding considerations of public policy." *Id.* at 224, 108 S.Ct. 538. Thus, "[i]n light of the Supreme Court's 'quite sparing' recognition of absolute immunity ..., we begin with [a] presumption that qualified rather than absolute immunity is appropriate," unless the official invoking absolute immunity meets a "heavy burden of establishing entitlement" to it. *Odd v. Malone,* 538 F.3d 202, 207–08 (3d Cir.2008) (citation omitted). *B.S. v. Somerset Cnty.,* 704 F.3d 250 (3rd Cir., 2013).

The *Somerset* case goes on to say that the judicial process is itself a check against unscrupulous officials who overreach. *Id.*   However, DSS saw to it that Plaintiff had no judicial process whatsoever. In this case, the Defendants seeking the strong medicine suffer from a self-inflicted wound. It is hard to imagine any public policy consideration that would allow the

Defendants to engage in this activity with immunity. They have not come close to meeting the heavy burden required. Therefore, Appellants' absolute immunity argument must fail.

> II. Defendants are not entitled to qualified immunity for Plaintiff's familial claims because she has a clearly defined constitutional right regarding her elderly mother and it was error to dismiss those claims.

The District Court dismissed Plaintiff's claims for deprivation of her constitutionally protected interest to an "unfettered familial relationship" with her mother as afforded to her by the First Amendment (Right to intimate association) and the Fourteenth Amendment (Right to substantive Due Process). Both claims were dismissed due to the determination made below that an adult child has no constitutionally protected relationship with an incompetent parent. Accordingly, the District Court dismissed Plaintiff's claims arising out of the familial relationship (presumably in step one of the qualified immunity analysis). The District Court denied the Motion to Dismiss Plaintiff's claims for procedural Due Process violations.

The District Court reached this conclusion by determining that (1) a parent-child familial relationship protects the parent, not the child; (2) that the relationship between an adult child and an adult parent is not protected; and (3) failing to consider whether the relationship between an adult child of a disabled parent is indistinguishable from the relationship between a parent

and a minor child. In essence, the District Court ruled that the only "familial relationship" that is deserving of constitutional protection is a parent's rights with regard to their minor children. This narrow approach to the definition of "familial relationship" is unwarranted.

The United States Supreme Court rejected a similar argument in *Moore v. City of East Cleveland*. 431 U.S. 494 (1977). There the Plaintiff was convicted of violating a city ordinance which prohibited occupancy of certain dwellings to members of a single family. Plaintiff's family consisted of herself, an adult son and his child (Plaintiff's grandson), and another grandson by a different child who did not reside with Plaintiff. This second grandchild was not deemed a member of Plaintiff's family as defined by the ordinance. The city defended the ordinance by citing prior United States Supreme Court precedent which upheld restrictions on occupancy by unrelated individuals. In *Moore* the court found that the defect in the East Cleveland Ordinance was its distinction between some related individuals and others. This attempt to define family was overly instrusive. Essentially, the District Court made the same mistake in its analysis, only more so by distinguishing one incompetent family member (a minor child) from another incompetent family member (an elderly parent with Alzheimer's).

In *Strandberg v. City of Helena*, 791 F.2d 744 (9th Cir. 1986), the parents of an adult child filed an action against various entities and individuals as a result of their adult son hanging himself after being arrested. The Trial Court dismissed the claims which were based on the Plaintiff's right to parent their child because he was no longer a minor. However, the Appellate Court specifically noted the Trial Court did not dismiss the claims based on the Plaintiff's Fourteenth Amendment right to "companionship and society" of their adult son. In footnote one, the court added that this constitutionally protected right is distinct and separate from any right based on a parent-minor child relationship. In the case sub judice, Plaintiff was deprived of that same constitutionally protected right.

In *Smith v. City of Fontana*, 818 F.2d 1411 (9th Cir. 1987), both the estate of the deceased and minor and adult children of the deceased brought a section 1983 action alleging violation of their First Amendment right to the continued companionship and society of their father. The Trial Court dismissed their claim, and the Ninth Circuit Court of Appeals reversed. The appellate court held there was "no reason to accord less constitutional value to the child-parent relationship than we accord to the parent-child relationship." *Id.* at 1418. It therefore allowed both the minor children and the adult children to proceed with their claim. The constitutional rights of

18

both a child and a parent are equally deserving of protection, as are the rights

of an adult child and a minor child.

In *Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001) a mother

and her disabled adult son brought a §1983 action arising out of the son's

erroneous detention, alleging various constitutional violations. The trial

court dismissed the complaint as to all claims, both as to the parent and the

disabled adult child. The Ninth Circuit Court of Appeals reversed, stating

both the parent and the adult disabled child had stated §1983 claims based

upon a violation of their First and Fourteenth Amendment right to familial

association.

Hence, Plaintiff did have a well established constitutionally protected

right when DSS took her incompetent mother away. Further, Plaintiff

submits that the case law cited by the Magistrate discussing the

constitutional right when minor children are involved supports Plaintiff's

position. For what is the practical difference between a helpless child and a

helpless parent?

While the law on qualified immunity is easy to quote, its application

is anything but. The purpose of qualified immunity (and a laudable one) is

to protect officials from vexatious litigation due to hurried judgment calls

made in good faith while acting pursuant to lawful authority. That purpose

is absent here. The Defendants portray this matter as a daughter who disagreed with a government official over whether proper grounds existed to remove her elderly mother (who suffered from Alzheimer's) from their home due to alleged financial and physical abuse. That is a gross oversimplification which ignores the key instances wherein the Plaintiff's Constitutional rights were violated.

DSS didn't even ask Mae Bell's geriatrician if she saw evidence of physical abuse or neglect nor whether she had any opinion regarding Mae Bell's competency when the POA was executed. Presumably, Dr. Hamrick knows something about Alzheimer's. Yet no one asked her if Mae Bell exhibited symptoms of abuse? Keep in mind that ALL these allegations were rejected when Plaintiff finally had an opportunity to defend herself in the criminal action. Plaintiff's counsel was prohibited from asking Dr. Hamrick a single question. Was the outcome of the hearing ever in doubt? Mae Bell was vibrant and active in June of 2009. She lived less than seven months after DSS stepped in to "help her". (JA 21)

One wonders whether DSS' decision to take emergency action was based on any "threat" to Mae Bell's well being OR whether it was to expeditiously confiscate Plaintiff's bank accounts. Note that over three months passed between the initial visit by DSS (June 15, 2009) and the

emergency ex parte proceeding on August 12, 2009. (JA 13-14) Without the "emergency" action, DSS could not have convinced the judge to seize Plaintiff's bank accounts at the continuance hearing. There was no emergency. There was no threat. There was no injury. There was NO real DSS inquiry. Hence, there was no good faith.

The complaint adequately alleged that Plaintiff's established constitutional rights were clearly violated. Hence, qualified immunity does not apply. Moreover, DSS has certainly not shown the type of good faith that would warrant application of qualified immunity -- even if it did otherwise apply.

> III.    Defendants are not entitled to qualified or absolute immunity for Plaintiff's claims related to Medicaid planning because she has a clearly defined constitutional right to engage in that activity and it was error to dismiss those claims.

The Pitt County Department of Social Services only has the authority to freeze the assets of a dependent person, in this case Mae Bell, not the Plaintiff! DSS seized THE PLAINTIFF'S ASSETS IN A CASE IN WHICH PLAINTIFF WAS NOT A PARTY - and wasn't even present! Not satisfied, DSS wanted Plaintiff held in contempt. (JA 16) This is an ultra vires act for which no immunity can apply. *Larson v. Domestic and Foreign Commer Corp.,* 338 U.S. 682 (1949)    (Where the officer's powers are limited by statute, his actions beyond those limitations are considered

21

individual and not sovereign actions. The officer is not doing the business which the sovereign has empowered him to do or he is doing it in a way which the sovereign has forbidden. His actions are ultra vires his authority and therefore may be made the object of specific relief.)  DSS cannot obtain immunity for doing something it shouldn't have been doing in the first place. *See also Vosburg.*

Admittedly, Medicaid planning also encompasses conduct, but so does burning a flag.  All Plaintiff (and her mother) did was go to a board certified elder lawyer who advised them on Medicaid planning.  Plaintiff's mother executed a power of attorney.  Later, Plaintiff used that power of attorney to transfer her mother's estate so her mother could later qualify for Medicaid in the event her Alzheimer's condition necessitated nursing home treatment.

Plaintiff and attorney Larry Graham were simply voicing their opposition to the Medicaid program's rules regarding taking away the family farms.  During the Clinton Administration, the Federal Court in New York ruled that advising clients about Medicaid asset forfeiture avoidance is protected speech. *New York State Bar Association v. Reno,* 999 F. Supp. 710 (NDNY 1998)  As a result, a permanent injunction was entered that forbade prosecution of attorneys who "tell" their clients how to perform legal

22

activity. Congress had just repealed the "lock up granny law" but retained the prohibition against providing legal advice in this area.

The federal injunction and that Court's reasoning do confer a constitutionally protected right (under the First Amendment) to engage in Medicaid planning.

Pitt County DSS (the agency entrusted to administer the Medicaid program locally) is legally presumed to know that Medicaid planning (and advice about it) are both legal and protected by the First Amendment.

The Magistrate and the District Court opined that there is no clearly delineated constitutional right to engage in Medicaid planning. If Plaintiff does have that right, there can be little doubt that DSS violated it. Hence, qualified immunity would not defeat that claim. Plaintiff and her mother sought the advice of a qualified elder lawyer. Still, Plaintiff's life was turned upside down and her family ripped apart.

No type of immunity (qualified or absolute) applies to the malicious acts set forth in this case. It would be akin to a police officer who fires a shot while on a domestic call but afterwards decided to call the impound yard and have the family car towed away because they had been fighting over the car. The police officer may be entitled to qualified immunity for the shooting in the line of duty, but not for having the family car towed away

afterwards!  The analogy, though absurd, is apt.  DSS had no more authority to seize Plaintiff's bank accounts than the police officer who had the family car towed.  Likewise, neither is entitled to immunity.

It is difficult to conceive what Appellants advance on appeal: DSS employees can take Plaintiff's money <u>without</u> any legal authority, <u>without</u> naming Plaintiff as a party do this in her absence - continuance hearing!  And, it may do so with impunity.  No type of immunity applies to these ultra vires acts.  There was no quick decision or dangerous judgment call involved.  At no stage of the proceedings was Plaintiff allowed to be heard.  Do we really need a legal precedent to know that the government can't do that?

It is difficult to believe that DSS and its agents just forgot to ask Mae Bell's doctor whether Mae Bell was physically or psychologically harmed.  It is still more difficult to believe that DSS didn't think about calling the lawyer who executed the power of attorney for Mae Bell as a witness at the hearing.  It is far more likely that doing either would have sunk their case.  DSS didn't just violate Plaintiff's constitutional rights.  It trampled on them.  Then they literally told Plaintiff she had no rights.

IV.  The Abuse of Process Tort should be reinstated as Plaintiff alleged the necessary elements.

Not satisfied with the havoc reaped thus far, DSS had the Plaintiff arrested for numerous crimes entailing physical and financial abuse of the elderly. DSS' victory was now complete, it seemed. They already had Plaintiff's mother and her money (which was never returned). Now they had her liberty too! If convicted of only a few of the charges, the 66 year old Plaintiff would likely die in prison.

The District Court dismissed Plaintiff's claim for Abuse of Process on the basis that Plaintiff had alleged only the **initiation** of legal process but did not allege any abuse **after** the action was initiated. This is incorrect. Plaintiff's complaint refers to several significant acts after process was initiated. References from paragraphs in the Plaintiff's complaint are set forth below:

> 40. DSS Action initiated on August 12, 2009; testimony by Gallagher – hearing was necessarily after the action was initiated;
> 41. Court entered emergency Ex Parte Order;
> 45. August 13, 2009 - DSS restricts visitation despite Court's refusal to do so on August 12, 2009;
> 52. August 18 order entered freezing assets in Plaintiff's absence;
> 53. September 29, 2009 – Full Adult protective services hearing but Plaintiff not allowed to participate;
> 54 - 56. Specific instances of misconduct during the DSS hearing;
> 57. Court inquires as to a forensic accounting and is told it will be done but it never is; and
> 59-61, 63, 64, 66-70. More examples of impropriety during the hearing;
> 71. DSS argues against Linda Evans' involvement in the case stating her rights are not being affected;

72.  November 2009 – DSS obtains guardianship over Plaintiff's mother;

73.  December 4, 2009 - Criminal proceedings initiated – DSS arranges visit so warrants can be served;

74.  December 7, 2009 – Plaintiff arrested on her 66th birthday;

75.  Plaintiff booked in jail after assets were frozen;

76.  Conduct suffered by Plaintiff while in jail;

81.  December 31, 2009 - DSS initiates civil action against Plaintiff; Notice of Lis Pendens filed January 6, 2010 to cloud title;

82.  February 8, 2010 - Plaintiff indicted;

83.  Indictments filed, dismissed and refiled; and

84.   August 10, 2012 – Criminal charges dismissed with prejudice.

Given that Plaintiff pled many instances after the initial process was commenced, it was error to dismiss the abuse of process claim.

### V.  Plaintiff's claim for Intentional Infliction of Emotional Distress was sufficiently pled and should be reinstated.

Fast forward a couple years.  ALL criminal charges against Plaintiff are dropped, but Mae Bell died a year earlier.  Plaintiff learned of her mother's passing by reading the death notice.

The District Court dismissed Plaintiff's claim for intentional infliction of emotional distress on the basis that the complaint was "devoid of factual allegations demonstrating Plaintiff suffered severe emotional distress".  That is also incorrect.  Plaintiff specifically alleged that in paragraph 96(c), that she suffered damages including, "physical pain and suffering and emotional trauma and suffering the loss of her mother and her family."  Note the

26

additional references from her complaint as set forth below via reference to

the corresponding paragraph in the complaint:

> 73. Arrested on her 66th birthday;
> 76. December 2009 - Plaintiff went into shock and was assaulted and ridiculed while jailer "shook" the shock out of her;
> 86. On August 17, 2012, **still suffering** from pain, weakness and dehydration and weight loss; and
> 116. Defendants alone or in conjunction with each other intended to and did in fact cause **severe emotional distress** to the Plaintiff.

Taken in the light most favorable to Plaintiff, these allegations alone

are sufficient to allege the requisite emotional injury to Plaintiff. If more

details are required the appropriate remedy is a Motion and Order for More

Specific Statement, or discovery, not dismissal of the action.

The test for the sufficiency of the allegations in an action for

intentional or negligent infliction of emotional distress is whether they are

sufficient to give defendant notice of the nature and basis of the claim so as

to enable him to answer and prepare for trial. *Forbis v. Honeycutt*, 301 N.C.

699, 701, 273 S.E.2d 240, 241. Plaintiff's complaint is sufficiently specific

to allow Defendants to answer and prepare for trial.

In *Johnson v. Ruark Obstetrics*, 327 N.C. 283, 395 S.E.2d 85 (1990)

the North Carolina Supreme Court upheld the sufficiency of a pleading in an

action for negligent infliction of emotional distress which stated the

plaintiffs' "experienced the 'past, present and future pain and suffering and

emotional distress of enduring the labor, with the knowledge that their unborn child was dead, and the delivery of that dead child.'" *Id.*

In *McAllister v. Ha*, 347 N.C. 638, 496 S.E.2d 577 (1998) the North Carolina Supreme Court upheld an action for negligent infliction of emotional distress brought by the parents of a child born with sickle-cell disease. The Complaint contained the following allegations: (1) Defendant's negligence caused them "extreme mental and emotional distress"; (2) plaintiff wife could not sleep through the night because of fear of the son's illness; and (3) the resulting sleepiness prevented plaintiff-wife from peak job performance. The Court upheld the sufficiency of this pleading both as to the plaintiff husband and the plaintiff wife. Therefore the only allegation made by plaintiff husband, and deemed sufficient by the court, was that he had suffered "extreme mental and emotional distress".

In *Acosta v. Byrum*, 180 N.C. App. 562, 638 S.E.2d 246 (2006) the North Carolina Court of Appeals upheld the sufficiency of a complaint for intentional infliction of emotional distress and negligent infliction of emotional distress. There the Plaintiff alleged the Defendant's allowed unauthorized access to her medical records. She claimed "defendant's negligence caused severe emotional distress, humiliation and mental anguish. This allegation alone, when combined with her other factual

claims, placed defendant 'on notice of the nature and basis of plaintiff's claim". Therefore, plaintiff's factual and legal allegations are sufficient to state a claim for negligent infliction of emotional distress." 180 at ; 638 at 252. The "other factual claims" referred to related not to plaintiff's injuries but rather to defendants' conduct.

Finally, this doesn't read like a legal action; it reads like a horror movie. It is nothing more - and nothing less - than a cavalier exhibition of unbridled authority by a leviathan-like agency that has neither the time, nor the inclination, to consider the impact its actions have on others. This is why we have section 1983. Once we had a King. Ours is a nation of laws. Plaintiff simply went to court to pursue her rights under the law. She should be permitted to have the day in Court that the defendants have denied her up to this point.

CONCLUSION

Immunity does not apply to this case at all, whether absolute or qualified. Moreover, Plaintiff sufficiently pled the state tort claims of abuse of process and intentional infliction of emotional distress. Wherefore, Appellee/Cross-Appellant seeks remand with instructions that Plaintiff's claims discussed herein be reinstated and that Plaintiff be allowed to amend

her pleadings prior to dismissal for matters that can be addressed by simple amendment.

Respectfully submitted this 7th day of February, 2014.

By: /s/ David C. Sutton
Attorney for Plaintiff
NC State Bar No. 29825
105-B Regency Boulevard
Greenville NC 27834
Telephone: 252-756-7124

CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[x] this brief contains [6,537] words, excluding the parts of the brief exempted by Fed. R. App.P.32(a)(7)B)(iii), or

[ ] this brief uses a monospaced typeface and contains [state the number of] lines of text, excluding the parts of the brief exempted by Fed.R.App.P.32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P.32(a)(6) because: [x] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2003*] in [*14pt Times New Roman*]; or

[ ] this brief has been prepared in a monospaced typeface using [state name and version of word processing program] with [state number of characters per inch and name of type style].

Dated:  February 7, 2014          /s/ David C. Sutton
                                  Counsel for Appellee/Cross-Appellant

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 7th day of February, 2014, I cause this

Brief of Appellee/Cross-Appellant and Joint Appendix to be filed

electronically with the Clerk of the Court using the CM/ECF System, which

will send notice of such filing to the following registered CM/ECF users:

Scott C. Hart
Attorney at Law
PO Drawer 889
New Bern, NC 28563


*Counsel for Appellants/Cross-Appellees*

I further certify that on this 7th day of February, 2014, I caused the

required copies of the Brief of Appellee/Cross-Appellant to be hand filed

with the Clerk of Court.


/s/ David C. Sutton
*Counsel for Appellee/Cross-Appellant*